Filed 6/26/24

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| DOMINIQUE KEETON,<br><br>      Plaintiff and Respondent,<br>v.<br><br>TESLA, INC.,<br><br>      Defendant and Appellant. | A166690<br><br>(Alameda County<br>Super. Ct. No. RG21109088) |

Plaintiff Dominique Keeton sued her employer, Tesla, Inc. (Tesla), for discrimination, harassment, and retaliation. The parties agreed to submit the dispute to arbitration as provided in their arbitration agreement. After Tesla failed to pay its arbitration fees within the 30-day window established by Code of Civil Procedure section 1281.98, subdivision (a)(1), Keeton moved to vacate the order submitting the dispute to arbitration.[1] The trial court granted the motion, finding that under section 1281.98, Tesla materially breached the parties' arbitration agreement, and thus Keeton was entitled to proceed with her claims in court.

On appeal, Tesla argues the trial court erred in granting Keeton's motion to vacate because (1) the arbitration agreement delegated issues of arbitrability to the arbitrator; (2) the Federal Arbitration Act (FAA) (9 U.S.C.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B and II.D.

[1] Undesignated statutory references are to the Code of Civil Procedure.

§ 1 et seq.) preempts section 1281.98; and (3) section 1281.98 constitutes an unconstitutional impairment of the arbitration agreement.  We disagree and affirm.

## I.  BACKGROUND

Keeton began working for Tesla in 2017 as a production associate.  She signed an employment agreement that contained an arbitration provision.  It provided, among other things, that all disputes regarding her employment be resolved by binding arbitration conducted by the Judicial Arbitration and Mediation Services, Inc. (JAMS) "under the then current rules of JAMS for employment disputes."

In August 2021, Keeton filed a complaint against Tesla asserting claims for harassment, race-based discrimination, failure to prevent harassment and discrimination, and retaliation.  Thereafter, the parties stipulated to submit the dispute to binding arbitration before JAMS.  The court granted the stipulation and stayed the action pending completion of arbitration.

A few months later, Keeton submitted her demand for arbitration to JAMS.  Both parties paid a filing fee to commence the arbitration.

On February 25, 2022, JAMS sent the parties a letter confirming the appointment of an arbitrator and seeking payment of a deposit for "all pre-hearing work."  The letter said payment was "due upon receipt."  Over the next month, JAMS sent four additional letters to the parties stating that payment was due "upon receipt" in order "to move forward with the arbitration."  Each letter attached an invoice for the pre-hearing deposit.

On March 28, JAMS e-mailed the parties another reminder to pay the pre-hearing deposit.  The following day, Tesla mailed a check to JAMS for the

2

full amount of the deposit. JAMS received the payment the next day, thirty-three days from the date of the initial invoice.

Approximately a month later, Keeton moved to vacate the trial court's order submitting the action to binding arbitration and to lift the stay on litigation on the ground that Tesla failed to pay its arbitration fees within 30 days of the due date as required by section 1281.98, subdivision (a)(1). She argued its late payment was a material breach of the arbitration agreement and waived its right to compel arbitration.

In opposition, Tesla argued section 1281.98 was preempted by the FAA. It further contended that the arbitration agreement delegated to the arbitrator the issues of whether section 1281.98 applied and whether Tesla complied with the statute.

The trial court granted the motion. The court first determined that it had jurisdiction to decide the motion because the arbitration agreement did not delegate issues of breach or arbitrability to the arbitrator. Turning to the merits of the motion, the court concluded that pursuant to section 1281.98, Tesla materially breached the arbitration agreement by failing to pay its arbitration fees within 30 days of the due date. It therefore lifted the stay and imposed a $1,000 monetary sanction on Tesla under section 1281.99.

## II. DISCUSSION

Tesla challenges the trial court's order granting Keeton's section 1281.98 motion on three grounds, each of which we will address in turn. Before reaching these arguments, however, we begin with an overview of section 1281.98, which is part of the California Arbitration Act (CAA).

### A. Section 1281.98

The CAA " 'represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed

3

statutory scheme, the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 983.)  It establishes, among other things, procedures for the enforcement of arbitration agreements and rules for the conduct of arbitration proceedings.  (*Ibid.*)

In 2019, the Legislature added section 1281.98 to the CAA.[2]  (Stats. 2019, ch. 870, § 5.)  Subdivision (a)(1) of the statute provides: "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, *if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach.*"  (§ 1281.98, subd. (a)(1), italics added.)

---

[2] Tesla claims the arbitration agreement does not incorporate section 1281.98, noting that the statute was enacted after the parties had entered into the agreement.  We need not consider this contention because Tesla has not developed the argument under a separate heading.  (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377, fn. 3 ["[W]e do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument."].)  In any event, "where, as here, the parties to a contract incorporate a law that is to be used at some time in the future (here, at the time the arbitration takes place), the parties are deemed to have contemplated—and hence, consented to—the incorporation of postcontract changes to that law." (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 642 (*Gallo*), citing *Torrance v. Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 379.)  As we will explain, the parties incorporated the CAA into their arbitration agreement.

4

Section 1281.98, subdivision (b), states, in relevant part, "If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may unilaterally elect to do any of the following: [¶] (1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction"; or (2) continue the arbitration.

The Legislature enacted section 1281.98 due to a concern that "[a] company's failure to pay the fees of an arbitration service provider . . . hinders the efficient resolution of disputes and contravenes public policy." (Stats. 2019, ch. 870, § 1, subd. (c).) Because an employer is responsible for paying arbitration fees, the statute "aim[ed] to solve a very specific problem— namely, the ' "procedural limbo and delay" ' that consumers and employees face when they are ' "forced to submit to mandatory arbitration to resolve a[ ] . . . dispute," ' and the business or company that pushed the case into an arbitral forum then ' "stalls or obstructs the arbitration proceeding by refusing to pay the required fees." ' " (*Gallo, supra*, 81 Cal.App.5th at p. 634, citing Assem. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019– 2020 Reg. Sess.) as amended May 20, 2019, p. 2.) Prior to the enactment, state law did "not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence arbitration in a timely manner." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019– 2020 Reg. Sess.) as amended May 20, 2019, p. 6.)

In this case, the trial court found that under the terms of section 1281.98, subdivision (a)(1), Tesla, as the drafting party, "materially breached" the arbitration agreement because it failed to pay arbitration fees within 30 days after the due date. Although Tesla made the payment a few days after the expiration of the 30-day time limit, the Legislature intended the statute

5

"to be strictly applied" when the drafting party does not pay the fees within the 30-day deadline. (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 753; accord, *Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 357–358, 362.) The court therefore granted Keeton's motion to vacate the order submitting the parties' dispute to arbitration.

Tesla does not take issue with the trial court's findings regarding its untimely payment or the court's interpretation of section 1281.98. We therefore presume the court correctly applied the statute to the facts and turn to Tesla's first argument, which is that the court erroneously disregarded the arbitration agreement's delegation clause.

## B. *Delegation to the Arbitrator*

Tesla claims the arbitration agreement delegated to the arbitrator issues of arbitrability, issues which it contends include whether section 1281.98 applies in this case and whether Tesla materially breached the arbitration agreement by failing to pay its share of the arbitration fees in a timely manner.[3] Even assuming the statutory issues constitute issues of arbitrability, we conclude from our de novo review the trial court did not err in resolving those issues. (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890 [standard of review where facts are undisputed].)

"Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties

---

[3] Tesla appears to change its stance in its reply brief, contending that there is a "presumption" the arbitrator will decide issues of breach and waiver, and thus it is "not necessary" to rely on a delegation clause "to hold that breach and waiver were within the arbitrator's general jurisdiction." We will not consider an argument raised for the first time in a reply brief. " ' "Obvious considerations of fairness in argument demand that the appellant present all of his [or her] points in the opening brief." ' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

6

intended the arbitrator to decide arbitrability." (*Dennison v. Rosland Capital LLC* (2020) 47 Cal.App.5th 204, 209.) This is a "heightened standard" since " 'contracting parties would likely have expected a court to have decided' " arbitrability. (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 69, fn. 1.) An express provision directing the arbitrator to determine issues of arbitrability constitutes clear and unmistakable evidence of an intent to delegate. (See, e.g., *Aanderud v. Superior Court, supra,* 13 Cal.App.5th at p. 892; *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560.)

In this case, the parties' arbitration agreement contains no express language delegating arbitrability issues to the arbitrator. That the agreement states "all disputes, claims, or causes of action" are to be submitted to arbitration is insufficient under the clear and unmistakable standard since that language "could reasonably be understood to express no more than the parties' 'intention to arbitrate all *substantive* claims.' " (*Gostev v. Skillz Platform, Inc.* (2023) 88 Cal.App.5th 1035, 1050.)

In arguing that the arbitration agreement delegated the section 1281.98 issues to the arbitrator, Tesla relies on language in the agreement that the arbitration is to be conducted by JAMS "under the then current rules of JAMS for employment disputes." The relevant JAMS rule, in turn, provides that "arbitrability issues, including disputes over the formation, existence, validity, [and] interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator." Tesla claims that the agreement's incorporation of this rule establishes that the parties agreed to arbitrate the statutory issues.

In the employment context, however, incorporation of an arbitration provider's rules does not satisfy the clear and unmistakable test. (*Beco v. Fast Auto Loans, Inc.* (2022) 86 Cal.App.5th 292, 305; accord, *Gostev v. Skillz*

*Platform, Inc., supra*, 88 Cal.App.5th at p. 1052.) Our colleagues in Division 5 of this court explained: "[W]hile the incorporation of [American Arbitration Association] rules into an agreement might be sufficient indication of the parties' intent in other contexts, we seriously question how it provides clear and *unmistakable* evidence that an employer and an employee intended to submit the issue of the unconscionability of the arbitration provision to the arbitrator, as opposed to the court. There are many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues of enforceability. [¶] Moreover, the reference to AAA rules does not give an employee, confronted with an agreement she is asked to sign in order to obtain or keep employment, much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 790, criticized on another ground in *Malone v. Superior Court, supra*, 226 Cal.App.4th at p. 1563 & fn. 9.)

Here, there is no evidence indicating Keeton knowingly agreed to delegate arbitrability disputes to an arbitrator. She was a production associate, not a lawyer. It does not appear that the agreement—which Keeton was asked to sign as a condition of her employment with Tesla—attached the JAMS rules or informed her where to locate them. (See *Beco v. Fast Auto Loans, Inc., supra*, 86 Cal.App.5th at p. 306 [noting that arbitration contract did not attach the rules or indicate where to find them].) Under these circumstances, for the reasons stated in *Ajamian*, Tesla has not met its burden to overcome the presumption that the court decides issues of arbitrability. "[I]t is not enough that ordinary rules of contract interpretation simply yield the result that arbitrators have power to decide their own

8

jurisdiction. Rather, the result must be clear and unmistakable, because the law is solicitous of the parties actually *focusing* on the issue." (*Gilbert Street Developers, LLC v. La Quinta Homes, LLC* (2009) 174 Cal.App.4th 1185, 1191–1192.)

The cases cited by Tesla do not compel a different result. *Brinkley v. Monterey Financial Services, Inc.* (2015) 242 Cal.App.4th 314, 321–322, and *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1115, do not involve an employment agreement. *Brennan v. Opus Bank* (2015) 796 F.3d 1125 limited its "holding to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.' " (*Id.* at p. 1131.) And while *Zenelaj v. Handybook, Inc.* (N.D. Cal. 2015) 82 F.Supp.3d 968, 970, supports Tesla's position, the Northern District has since "routinely" held that incorporation of an arbitration provider's rules does not constitute clear and unmistakable evidence where at least one party is unsophisticated (*MacClelland v. Cellco Partnership* (2022) 609 F.Supp.3d 1024, 1031–1032 [collecting cases]).

In sum, Tesla has not shown that there is clear and unmistakable evidence of an agreement to delegate to the arbitrator the section 1281.98 issues.

### C. FAA Preemption

Tesla next argues that the FAA preempts section 1281.98. It relies on the FAA's equal treatment principle, asserting that while a court can invalidate an arbitration agreement based on " 'generally applicable contract defenses,' " it cannot do so based on state rules that " 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' " (*Kindred Nursing Ctrs. Ltd. Partnership v. Clark* (2017) 581 U.S. 246, 251 (*Kindred Nursing*).) Reviewing the issue de novo

(*Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 778), we disagree that section 1281.98 is preempted by the FAA.[4]

### 1. *General FAA Preemption Law*

Like the CAA, the FAA reflects a policy favoring arbitration. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971.) Section 2 of the FAA establishes the equal treatment principle. (*Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 649–650.) It provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) As interpreted, this statutory provision "preempts any state rule discriminating on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.' " (*Kindred Nursing, supra*, 581 U.S. at p. 251.) But a state rule is not preempted merely because it is specific to arbitration. (*Gallo, supra*, 81 Cal.App.5th at pp. 638–639.)

In general, there are three situations in which state law is preempted by federal law: "(1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." (*Industrial Truck Ass'n, Inc. v. Henry* (9th Cir. 1997) 125 F.3d 1305, 1309.)

---

[4] The FAA applies to contracts that involve interstate commerce. (*Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 76.) Tesla contends, and Keeton does not dispute, that the FAA applies to the arbitration agreement because Tesla is a national company.

The first two situations do not apply here. "The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." (*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior University* (1989) 489 U.S. 468, 477 (*Volt*).) The question then is whether section 1281.98 conflicts with or obstructs the FAA's purposes. (*Volt*, at p. 477.)

In *Volt*, the United States Supreme Court clarified the circumstances in which the FAA does not preempt arbitration-specific state rules. (*Volt, supra*, 489 U.S. at pp. 470, 476–479.) There, the parties entered a construction contract containing an arbitration agreement that incorporated the CAA. (*Id.* at pp. 470, 476.) The plaintiff asserted claims of fraud and breach of contract against the defendant, who moved to compel arbitration. (*Id.* at pp. 470–471.) The plaintiff responded by moving to stay arbitration pursuant to section 1281.2, subdivision (c), which is part of the CAA and permits a court to stay arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it, where "there is a possibility of conflicting rulings on a common issue of law or fact." (*Volt*, at p. 471.) That section also allows the court to "refuse to enforce the arbitration agreement." (§ 1281.2.) The trial court denied the defendant's motion to compel arbitration and stayed the arbitration proceeding. (*Volt*, at p. 471.) The California Court of Appeal affirmed. (*Ibid.*)

On review, the Court held that section 1281.2, subdivision (c), does not undermine the goals and policies of the FAA where the parties agreed to abide by state rules of arbitration, "even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward." (*Volt, supra*, 489 U.S. at p. 479.) It acknowledged that one of the purposes of the FAA was to place arbitration agreements " ' "upon the same footing as other

11

contracts," ' " but reasoned that "its passage 'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.' " (*Volt*, at p. 478.) Thus, the FAA's "principal purpose" was to ensure that "private arbitration agreements are enforced according to their terms." (*Volt*, at p. 478.) The Court further held that there was "no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Id.* at p. 476.) Accordingly, because the parties incorporated the CAA into their arbitration agreement, the Court concluded that applying section 1281.2 to the case before it would "give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA." (*Volt*, at p. 479.)

### 2. *Court of Appeal Cases*

While our high court has yet to decide whether the FAA preempts section 1281.98, the Second District concluded in *Gallo* that an almost identical statute—section 1281.97—was not preempted by the FAA. (*Gallo, supra*, 81 Cal.App.5th at pp. 629–630.) Like section 1281.98, the statute provides that an employer materially breaches an arbitration agreement and waives its right to compel arbitration by failing to pay certain fees within 30 days of the due date, and it allows an employee to withdraw from arbitration in the event of such a breach. (§ 1281.97, subds. (a)(1), (b)(1).) *Gallo* involved an employment dispute. (*Gallo*, at p. 630.) The trial court granted the employer's motion to compel arbitration. (*Id.* at p. 631.) Thereafter, the employer failed to pay its portion of the filing fee within 30 days of the due date. (*Id.* at pp. 631–632.) Pursuant to section 1281.97, the employee moved to vacate the order compelling arbitration, and the court granted the motion. (*Gallo*, at p. 632.)

On appeal, the Second District, citing *Volt*, looked to whether section 1281.97 conflicted with or obstructed the FAA's purposes. (*Gallo, supra*, 81 Cal.App.5th at p. 637.) It began by examining authority holding that state laws were preempted by the FAA because they discriminated against arbitration contracts, noting that those cases involved arbitration-specific laws that either outright prohibited arbitration or discouraged arbitration. (*Gallo,* at pp. 637–638; see *Southland Corp. v. Keating* (1984) 465 U.S. 1, 10–16 (*Southland Corp.*) [FAA preempted state law invalidating agreements to arbitrate certain franchise disputes]; *Doctor's Assoc., Inc. v. Casarotto* (1996) 517 U.S. 681, 688 [FAA preempted state law invalidating arbitration contracts that did not contain a particular form of notice].) It compared that authority to *Volt* and other cases involving arbitration-specific rules that did not outright prohibit or discourage arbitration, concluding that a state law is not preempted by the FAA "*merely because* it is arbitration specific." (*Gallo*, at pp. 638–640.)

The *Gallo* court then discussed the two "fundamental attributes" of arbitration—"honor[ing] the parties' mutual desire to engage in arbitration" and the " 'promise of quicker, more informal, and often cheaper [dispute] resolutions for everyone involved.' " (*Gallo, supra*, 81 Cal.App.5th at pp. 640–641, citing *Volt, supra*, 489 U.S. at p. 478; *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 924 [noting "arbitration's fundamental attributes of speed and efficiency"].)

Applying these principles, the *Gallo* court concluded that the FAA did not preempt section 1281.97, even though it is specific to arbitration contracts. (*Gallo, supra*, 81 Cal.App.5th at p. 641.) It first noted that the statute does "not commit the additional—and, as noted above, *necessary for preemption*—sin of outright prohibiting arbitration or more subtly

13

discouraging arbitration." (*Ibid.*) Rather, the court concluded, the statute was " 'akin to a statute of limitations' " because it defined the date by which the drafting party must pay certain fees and costs and specifies the consequences of untimely payment. (*Ibid.*, citing *PGA West Residential Assn., Inc. v. Hulven International, Inc.* (2017) 14 Cal.App.5th 156, 176 ["[A] garden variety statute of limitations is procedural and merely affects a remedy and not a substantive right or obligation."].) Thus, the statute "help[s] to define what it means to arbitrate under the CAA." (*Gallo,* at p. 642.)

The *Gallo* court further reasoned that section 1281.97 does not interfere with the FAA's objectives. (*Gallo, supra*, 81 Cal.App.5th at pp. 642–643.) Applying the statute would honor the parties' intent to arbitrate their dispute because their agreement incorporated the CAA. (*Gallo*, at pp. 642–643.) The statute also does not interfere with the FAA's goal of promoting speed and efficiency; instead it "*facilitate*[s] arbitration by preventing parties from insisting that a dispute be resolved through arbitration and then sabotaging that arbitration by refusing to pay the fees necessary to move forward in arbitration." (*Gallo*, at p. 643.) The court therefore concluded that the FAA did not preempt section 1281.97. (*Gallo*, at p. 643.)

Since *Gallo*, almost every Court of Appeal that has considered whether section 1281.97 or section 1281.98 are preempted by the FAA has concluded they are not.[5] (See *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319,

---

[5] The federal district courts are split on the matter. (*Postmates, Inc. v. 10,356 Individuals* (C.D. Cal., Jan. 19, 2021, No. CV-20-2783-PSG), 2021 U.S.Dist. Lexis 28554, *21–*22 [no preemption]; *Agerkop v. Sisyphian* (C.D. Cal., Apr. 13, 2021, No. CV-19-10414-CBM) 2021 U.S.Dist. Lexis 245772, *11–*13 [same]; *Belyea v. GreenSky, Inc.* (N.D. Cal. 2022) 637 F.Supp.3d 745,

14

1325–1326, review granted June 12, 2024, S284498; *Suarez v. Superior Court of San Diego County* (2024) 99 Cal.App.5th 32, 41–43; *Espinoza v. Superior Court, supra*, 83 Cal.App.5th at pp. 783–785.)

### 3. *Section 1281.98 Is Not Preempted By the FAA*

We agree with *Gallo*'s reasoning and conclude that under *Volt*, the FAA does not preempt section 1281.98. (*Gallo, supra*, 81 Cal.App.5th at pp. 639, 643, 645.) The *Volt* court held that arbitration-specific state procedural rules are not preempted where the parties agreed to arbitrate by those rules and the rules are consistent with the FAA's objectives. (*Volt, supra*, 489 U.S. at pp. 477–479.) That is the case here. By imposing a strict deadline for payment of fees and specifying the consequences for untimely payment, section 1281.98 addresses the situation where an employer delays arbitration proceedings by failing to pay arbitration fees. (§ 1281.98, subds. (a)(1), (b).) The statute therefore furthers the purpose of the FAA for efficient and speedy resolution of claims. (*Sanchez v. Valencia Holding Co., LLC, supra*, 61 Cal.4th at p. 913.) And although the parties' arbitration agreement does not

---

758 [statute preempted]; *Lee v. Citigroup Corporate Holdings, Inc.* (N.D. Cal., Aug. 29, 2023, 22-cv-02718-SK) 2023 U.S.Dist. Lexis 164786, *2 [same].) The Second District also recently issued *Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th 222 (*Hernandez*), in which the court agreed with *Belyea* that section 1281.97 violates the FAA's equal treatment principle "because it mandates findings of material breach and waiver for late payment that do not apply generally to all contracts," which makes it "harder to enforce arbitration agreements" in consumer and employment contracts. (*Hernandez*, at p. 243.) It also disagreed with the holding in the *Gallo* line of cases that section 1281.97 furthers the goals of the FAA. (*Id.* at pp. 242–243.) For all the reasons discussed below, we disagree with *Hernandez*. We further note that *Hernandez* is distinguishable because the arbitration agreement in that case specifically said it was governed by the FAA. (*Hernandez*, at pp. 241–242.)

15

expressly incorporate the CAA, "the procedural provisions of the CAA apply in *California* courts by default." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174.) Therefore, application of section 1281.98 in this case would not undermine the federal policy "to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Volt*, at p. 476.)

Tesla offers three reasons why *Gallo* was wrongly decided. First, it argues that the FAA preempts section 1281.98 because it " 'withdraws the power to enforce [the] arbitration agreement' " from the drafting party. (*Southland Corp., supra,* 465 U.S. at p. 16, fn. 10.) The Northern District in *Belyea v. GreenSky, Inc., supra,* 637 F.Supp.3d 745 took the same stance. (*Id.* at p. 758.) The court held that section 1281.98 violated the FAA's equal treatment principle because it treated arbitration agreements differently than other contracts, and its application meant the drafting party could no longer enforce an arbitration agreement.[6] (*Id.* at pp. 756, 758.) "A rule affects the 'enforceability' of a contract when it determines that one side may enforce the contract, but the other may not." (*Id.* at p. 758.)

Tesla (and the *Belyea* court) has read the *Southland Corp.* rule too broadly. The possibility a court will not enforce an arbitration agreement does not necessarily establish preemption, since section 1281.2, subdivision (c)—the rule at issue in *Volt*—gives the court discretion to do exactly that. (See *Mount Diablo Med. Ctr. v. Health Net of Cal.* (2002) 101 Cal.App.4th 711, 716, 726–727 [holding under *Volt* that the FAA did not preempt section 1281.2, subdivision (c), where the court exercised its discretion under the statute to refuse to enforce the arbitration agreement].) In distinguishing

---

[6] We note that the parties in *Belyea* agreed that the FAA, not the CAA, would govern their arbitration agreement, which distinguishes the case from *Volt.* (*Belyea v. GreenSky, Inc., supra,* 637 F.Supp.3d at p. 759, fn. 6.)

section 1281.2, subdivision (c), from a law that was preempted by the FAA, the United States Supreme Court reasoned that the statute "did not affect the enforceability of *the arbitration agreement itself.*" (*Doctor's Assoc. v. Casarotto, supra*, 517 U.S. at p. 688, italics added; see also *Volt, supra*, 489 U.S. at pp. 478–479; *Postmates, Inc. v. 10,356 Individuals, supra*, 2021 U.S.Dist. Lexis 28554, at *22 ["[T]here is a difference between laws that invalidate arbitration agreements and laws that codify remedies available to assist arbitration."].)

That is the case here. Section 1281.98 does not outright invalidate arbitration agreements, and it is not "a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration." (*Mount Diablo Medical Center v. Health Net of California, Inc., supra*, 101 Cal.App.4th at p. 726.) Rather, if parties to an arbitration contract have agreed to apply the CAA, section 1281.98 provides the drafting party a 30-day grace period to make late payments, defines a drafting party's failure to pay within that window as a material breach of the arbitration agreement, and provides remedies to the non-drafting party for the breach, remedies that include the *option* to withdraw from arbitration. (§ 1281.98, subds. (a)(1), (b).) Thus, it is only because of the drafting party's own actions that a court may decline to enforce an arbitration agreement, and even then, the non-drafting party may still choose to proceed with arbitration. (*Id.*, subds. (a)(1), (b)(2).) For these reasons, we agree with *Gallo* that section 1281.98 is akin to a statute of limitations, as it does not speak to the enforceability of the arbitration agreement itself. (*Gallo, supra*, 81 Cal.App.5th at p. 641; see *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751 ["Termination of an action by a statute of limitations defense must be deemed a technical or procedural as distinguished from a substantive termination"

17

because it is not "dependent on nor reflective of the merits—or lack thereof—in the underlying action."].)

The authority relied on by Tesla is distinguishable. As noted, *Southland Corp., supra*, 465 U.S. at pages 10 to 16 concerned a law that prohibited arbitration of franchise disputes. And *Cronus Investments, supra*, 35 Cal.4th 376 held that the FAA did not preempt section 1281.2, subdivision (c), where the parties agreed to apply the FAA "if it would be applicable." (*Cronus Investments*, at pp. 380, 394.) In citing the general rule that the FAA "preempts all state laws that apply *of their own force* to limit those agreements against the parties' will or to withdraw the power to enforce them," the court cited cases involving rules that directly invalidated certain arbitration agreements. (*Cronus Investments*, at p. 385.) Lastly, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223 merely noted that the FAA precludes "invalidat[ion]" of an arbitration clause based on state law requirements not applicable to contracts generally, "such as proof of actual notice, meaningful reflection, signature by all parties, and/or a unilateral modification clause favoring the nondrafting party." (*Id.* at p. 245.) It cited as examples cases where the court found the agreement itself was unenforceable because it did not comply with certain requirements. (*Id.* at pp. 244–246.) In contrast, section 1281.98 does not outright invalidate arbitration agreements, and it only applies if the parties agree to conduct arbitration according to the CAA. (§ 1281.98, subds. (a)(1), (b).)

Tesla next argues that section 1281.98 discriminates against arbitration agreements by imposing a strict deadline on drafting parties for payment of fees (§ 1281.98, subd. (a)(1)), whereas the rule that applies to contracts generally for a material breach allows for a " 'reasonable time' " to

18

perform an act (Civ. Code, § 1657). Relatedly, Tesla contends that section 1281.98 imposes a different rule for waiver than that applicable to contracts generally. The *Gallo* court acknowledged that section 1281.97 deviated from the "usual rule." (*Gallo, supra*, 81 Cal.App.5th at p. 644.) Nonetheless, it rejected the employer's argument that the statute was preempted on that basis, emphasizing that the Legislature "had a good reason for declaring untimely payment a material breach as a matter of law rather than leaving materiality a question of fact in this context." (*Id.* at p. 644.)

We see no reason to depart from *Gallo* on this point. As *Volt* makes clear, in deciding whether a procedural rule discriminates against arbitration, it is not enough that the rule treats arbitration contracts differently than other types of contracts. Rather, the question is whether application of the rule "would undermine the goals and policies of the FAA." (*Volt, supra*, 489 U.S. at pp. 477–478.) As we have explained, section 1281.98 furthers, rather than hinders, the FAA's objectives. Like section 1281.2, subdivision (c), it is "part of the CAA and thus help[s] to define what it means to arbitrate under the CAA." (*Gallo, supra*, 81 Cal.App.5th at p. 642.) More specifically, it is designed to remedy a problem unique to the arbitration context that if left unaddressed would undercut " 'arbitration's fundamental attributes of speed and efficiency.' " (*Id.* at pp. 641, 644.)

Third, Tesla argues that the *Gallo* line of cases is inconsistent with *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411 (*Morgan*). There, the employee sued her employer for violations of the Fair Labor Standards Act. (*Id.* at p. 1711.) The employer litigated the case for eight months before moving to compel arbitration. (*Id.* at p. 1709.) The district court denied the motion based on waiver. (*Id.* at p. 1712.) The Eighth Circuit disagreed on the ground that the employee suffered no prejudice. (*Ibid.*) Although prejudice is

19

not a requirement of federal waiver law generally, the Eighth Circuit adopted the requirement in the arbitration context "because of the 'federal policy favoring arbitration.' " (*Id*. at pp. 1711–1712.)

The United States Supreme Court agreed to hear the case to decide "whether the FAA authorizes federal courts to create such an arbitration-specific procedural rule." (*Morgan, supra*, 596 U.S. at p. 1711.) It answered in the negative, noting that section 6 of the FAA provides that "any application" to the court " 'shall be made and heard *in the manner provided by law* for the making and hearing of motions.' " (*Morgan*, at p. 1714, citing 9 U.S.C. § 6, italics added.) It further held that "[t]he policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.' " (*Morgan*, at p. 1713.) Because "a federal court assessing waiver does not generally ask about prejudice," the Court determined that the Eighth Circuit erred in imposing an arbitration-specific requirement of prejudice. (*Id*. at pp. 1709, 1713.)

This case is distinguishable in that *Morgan* involved rights asserted under federal law and therefore did not concern preemption under section 2 of the FAA. (*Morgan, supra*, 596 U.S. at p. 1711.) In that context, *Morgan* merely reminded courts that section 6 of the FAA "does not authorize federal courts to invent special, arbitration-preferring procedural rules." (*Morgan,* at p. 1713, italics added.) But here, we are concerned with a state procedural rule that the parties incorporated into their arbitration agreement and that does not favor (or discriminate against) arbitration.[7]

---

[7] *Scott v. Yoho* (2016) 248 Cal.App.4th 392, cited in Tesla's reply brief, is also distinguishable, as it concerned a statute that effectively inserted into the parties' arbitration agreement a substantive provision giving them a right to rescind the agreement within 30 days after execution. (*Id*. at p. 404.)

20

Accordingly, under the circumstances in this case, we conclude that the FAA does not preempt section 1281.98.

### D. Contracts Clauses

Finally, Tesla contends section 1281.98 is unconstitutional under the contracts clause provisions of the California and United States constitutions. We disagree.

Article I, section 10 of the United States Constitution states: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." Article I, section 9 of the California Constitution provides: "A . . . law impairing the obligation of contracts may not be passed."

As the United States Supreme Court has interpreted the federal contracts clause, contracts clause questions turn on a three-step analysis.[8] (See *Energy Reserves v. Kan. Power & Light Co.*, *supra*, 459 U.S. at pp. 410– 412.) The first and threshold step is to ask whether there is any impairment at all, and, if there is, how substantial it is. (*Id.* at p. 411.) If there is no "substantial" impairment, that ends the inquiry. If there is substantial impairment, the court must next ask whether there is a "significant and legitimate public purpose" behind the state regulation at issue. (*Id.* at pp. 411–412.) If the state regulation passes that test, the final inquiry is whether the means by which the regulation acts are of a "character

Unlike the state procedural rule in our case, the rescission right interfered with the federally mandated policy favoring arbitration.

[8] We note that some courts reference this contracts clause analysis as a "two-step inquiry" (see *Postmates Inc. v. 10,356 Individuals, supra*, 2021 U.S.Dist. Lexis 28554, at *28; *Sveen v. Melin* (2018) 584 U.S. 811, 819) or a "multi-step inquiry" (see *Agerkop v. Sisyphian, supra*, 2021 U.S.Dist. Lexis 245772, at *14–16), but the analysis is identical to the "three-step analysis" referenced in *Energy Reserves v. Kansas Power & Light* (1983) 459 U.S. 400.

21

appropriate" to the public purpose identified in step two. (*Id.* at pp. 412, 418 [characterizing third step as "means chosen" to "implement" legislative "purposes"].) For economic and social regulation, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." (*Id.* at pp. 412–413.) The same three-part analysis applies under the contracts clause of the California constitution. (See *Barrett v. Dawson* (1998) 61 Cal.App.4th 1048, 1054–1055.)

The courts that have addressed whether section 1281.98 violates the contracts clauses have concluded it does not substantially impair arbitration agreements. Those courts reasoned that the statute "does not 'undermine the contractual bargain' or 'interfere with a party's reasonable expectations' because it merely imposes additional remedies that foster compliance with arbitration agreements. Statutory remedies that 'support, rather than impair, the contractual scheme' do not violate the Contracts Clause." (*Postmates Inc. v. 10,356 Individuals, supra*, 2021 U.S.Dist. Lexis 28554, at *28, citing *Sveen v. Melin, supra*, 584 U.S. at p. 819; accord, *Agerkop v. Sisyphian, supra*, 2021 U.S.Dist. Lexis 245772, at *14-16.)

Tesla claims section 1281.98 substantially impairs its rights under the arbitration agreement because it not only imposes additional remedies, but it also redefines breach, default, and waiver in the arbitration context, thereby inserting new terms into the parties' agreement. Even if Tesla is correct, however, section 1281.98 passes the second and third steps of the contracts clause analysis.

Regarding the second step, any impairment would be well-supported by a significant and legitimate public purpose to ensure efficient adjudication of employee claims that are subject to arbitration. (*De Leon v. Juanita's Foods, supra*, 85 Cal.App.5th at p. 750.) To that end, section 1281.98 is designed to

deter employers from delaying payment of arbitration fees. (*Doe v. Superior Court, supra*, 95 Cal.App.5th at p. 357.)

Turning to the third step—appropriate means—the Legislature accomplished section 1281.98's deterrence purpose by "establish[ing] strict breach provisions for nonpayment that did not involve any inquiry into the intent or good faith of an employer or the reasons for nonpayment." (*Doe v. Superior Court, supra*, 95 Cal.App.5th at p. 357.) Such a bright-line rule also better ensures there will not be further delays in the arbitration proceedings. Although Tesla contends section 1281.98 is not reasonable as applied to this case because its late payment did not impact arbitration scheduling, it does not cite any authority for the proposition that a statute must be narrowly tailored to its purpose to avoid violating the contracts clauses. (See *Barrett v. Dawson, supra*, 61 Cal.App.4th at p. 1056 [upholding statute even though it could have been "better tailored" to its purpose].) Giving deference to the Legislature's decision to enact section 1281.98 (*Energy Reserves v. Kansas Power & Light, supra*, 459 U.S. at pp. 412–413), the statute is not so unreasonable in relation to its purpose of promoting timely adjudication of employee claims that it fails the appropriate means test, especially since the statute still gives employers a 30-day window to pay arbitration fees past the due date for payment (§ 1281.98, subd. (a)(1)).

Section 1281.98 is therefore not unconstitutional under the contracts clauses of the California and United States constitutions.

## III. DISPOSITION

The order granting Keeton's motion under section 1281.98 is affirmed. Keeton shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278 (a)(1)–(2).)

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

SIGGINS, J.*

(*Keeton v. Tesla*; A166690)

---

\* Retired Presiding Justice of the Court of Appeal, First District assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

***Keeton v. Tesla* (A166690)**

Trial Court:      Alameda Superior Court

Trial Judge:      Hon. James Reilly

Attorneys:

      Reed Smith, Raymond A. Cardozo and Kathryn M. Bayes; Tesla, Kiran S. Lopez for Defendant and Appellant.

      Hunter Pyle Law and Hunter Pyle, Katie Fiester, and Andrea Núñez for Plaintiff and Respondent.